1
2
3
4
5
6
7
8          # UNITED STATES DISTRICT COURT

9                    EASTERN DISTRICT OF CALIFORNIA

10

11   MORRIS RODGERS,                          1:06-cv-01083-LJO-GSA (PC)
                                          /
12                  Plaintiff,            /
                                          /   ORDER DISMISSING FIRST AMENDED
13          v.                            /   COMPLAINT WITH LEAVE TO AMEND
                                          /
14   REYNAGA, et. al.,                    /   (Doc. 10)
                                          /
15                  Defendants.           /
     _____/

16

17   **I.      SCREENING ORDER**

18          Morris Rodgers ("Plaintiff") is a state prisoner proceeding pro se and in forma pauperis in

19   this civil rights action pursuant to 42 U.S.C. § 1983.  Plaintiff filed his original complaint on

20   August 17, 2006.  On January 31, 2008, Plaintiff filed his first amended complaint.

21          **A.      Screening Requirement**

22          The Court is required to screen complaints brought by prisoners seeking relief against a

23   governmental entity or officer or employee of a governmental entity.  28 U.S.C. § 1915A(a).  The

24   Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are

25   legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or

26   that seek monetary relief from a defendant who is immune from such relief.  28 U.S.C.

27   § 1915A(b)(1),(2).  "Notwithstanding any filing fee, or any portion thereof, that may have been

28   paid, the court shall dismiss the case at any time if the court determines that . . . the action or

                                          1

appeal . . . fails to state a claim upon which relief may be granted."  28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint, or portion thereof, should only be dismissed for failure to state a claim upon which relief may be granted if it appears beyond doubt that Plaintiff can prove no set of facts in support of the claim or claims that would entitle him to relief.  See Hishon v. King & Spalding, 467 U.S. 69, 73 (1984), *citing* Conley v. Gibson, 355 U.S. 41, 45-46 (1957); see also Palmer v. Roosevelt Lake Log Owners Ass'n, 651 F.2d 1289, 1294 (9th Cir. 1981).  In reviewing a complaint under this standard, the court must accept as true the allegations of the complaint in question, Hospital Bldg. Co. v. Rex Hospital Trustees, 425 U.S. 738, 740 (1976), construe the pleading in the light most favorable to the plaintiff, and resolve all doubts in the plaintiff's favor. Jenkins v. McKeithen, 395 U.S. 411, 421 (1969).

### B.	Summary of Plaintiff's Complaint

Plaintiff is a state prisoner at Kern Valley State Prison ("KVSP") in Delano, California – where the acts he complains of occurred.  Plaintiff names the following defendants:  Correctional Officers Ruben Reynaga, David Williams, Mario Lozano, Glen Chorley, Ryan Clare, Juan Medina, Bryan Jeanes, Christopher Rascoe, Apolinario Bangloy, and Luis Sarzi; Lieutenant F. Reynoso; and MTA Carla Embury.  Plaintiff delineates nine claims for relief based on factual allegations:  that on November 8, 2005, the Correctional Officer defendants unnecessarily and sadistically attacked him with an oil based chemical agent; that subsequently, Lt. Reynoso refused to take steps to properly decontaminate Plaintiff; and that MTA Embury failed to accurately record his injuries and provide timely medical care for his resulting condition(s). Plaintiff seeks monetary damages and a temporary injunctive to protect him from "such vindictive conduct."

Plaintiff has stated both cognizable and uncognizable claims for relief.  Thus, the Court will provide plaintiff with opportunity to file a second amended relief, in which he may be able to cure the deficiencies identified herein.

### C.	Pleading Requirements

#### 1.	*Federal Rule of Civil Procedure 8(a)*

1  "Rule 8(a)'s simplified pleading standard applies to all civil actions, with limited

2  exceptions," none of which applies to section 1983 actions.  Swierkiewicz v. Sorema N. A., 534

3  U.S. 506, 512 (2002); Fed. R. Civ. Pro. 8(a).  Pursuant to Rule 8(a), a complaint must contain "a

4  short and plain statement of the claim showing that the pleader is entitled to relief . . . ."  Fed. R.

5  Civ. Pro. 8(a).  "Such a statement must simply give the defendant fair notice of what the

6  plaintiff's claim is and the grounds upon which it rests."  Swierkiewicz, 534 U.S. at 512.  A court

7  may dismiss a complaint only if it is clear that no relief could be granted under any set of facts

8  that could be proved consistent with the allegations.  Id. at 514.  "'The issue is not whether a

9  plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support

10  the claims.  Indeed it may appear on the face of the pleadings that a recovery is very remote and

11  unlikely but that is not the test.'"  Jackson v. Carey, 353 F.3d 750, 755 (9th Cir. 2003) (quoting

12  Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)); see also Austin v. Terhune, 367 F.3d 1167, 1171

13  (9th Cir. 2004) ("'Pleadings need suffice only to put the opposing party on notice of the claim . . .

14  .'" (quoting Fontana v. Haskin, 262 F.3d 871, 977 (9th Cir. 2001))).  However, "the liberal

15  pleading standard . . . applies only to a plaintiff's factual allegations."  Neitze v. Williams, 490

16  U.S. 319, 330 n.9 (1989).  "[A] liberal interpretation of a civil rights complaint may not supply

17  essential elements of the claim that were not initially pled."  Bruns v. Nat'l Credit Union Admin.,

18  122 F.3d 1251, 1257 (9th Cir. 1997) (quoting Ivey v. Bd. of Regents, 673 F.2d 266, 268 (9th Cir.

19  1982)).

20  ### 2.  *Federal Rule of Civil Procedure 18(a)*

21  "The controlling principle appears in Fed.R.Civ.P. 18(a) 'A party asserting a claim to

22  relief as an original claim, counterclaim, cross-claim, or third-party claim, may join, either as

23  independent or as alternate claims, as many claims, legal, equitable, or maritime, as the party has

24  against an opposing party.' Thus multiple claims against a single party are fine, but Claim A

25  against Defendant 1 should not be joined with unrelated Claim B against Defendant 2. Unrelated

26  claims against different defendants belong in different suits, not only to prevent the sort of

27  morass [a multiple claim, multiple defendant] suit produce[s], but also to ensure that prisoners

28  pay the required filing fees-for the Prison Litigation Reform Act limits to 3 the number of

1  frivolous suits or appeals that any prisoner may file without prepayment of the required fees. 28

2  U.S.C. § 1915(g)."  George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007).

3      Plaintiff is advised that if he chooses to file a second amended complaint, and fails to

4  comply with Rule 18(a), the Court will count all frivolous/noncognizable unrelated claims that

5  are dismissed therein as strikes such that he may be barred from filing in forma pauperis in the

6  future.

7      **3.  *Linkage Requirement***

8      The Civil Rights Act under which this action was filed provides:

9          Every person who, under color of [state law] . . . subjects, or causes
           to be subjected, any citizen of the United States . . . to the
10         deprivation of any rights, privileges, or immunities secured by the
           Constitution . . . shall be liable to the party injured in an action at
11         law, suit in equity, or other proper proceeding for redress.

12  42 U.S.C. § 1983.  The statute plainly requires that there be an actual connection or link between

13  the actions of the defendants and the deprivation alleged to have been suffered by Plaintiff.  See

14  Monell v.  Department of Social Services, 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362

15  (1976).  The Ninth Circuit has held that "[a] person 'subjects' another to the deprivation of a

16  constitutional right, within the meaning of section 1983, if he does an affirmative act, participates

17  in another's affirmative acts or omits to perform an act which he is legally required to do that

18  causes the deprivation of which complaint is made."  Johnson v. Duffy, 588 F.2d 740, 743 (9th

19  Cir. 1978).  In order to state a claim for relief under section 1983, Plaintiff must link each named

20  defendant with some affirmative act or omission that demonstrates a violation of Plaintiff's

21  federal rights.  As will be discussed in greater detail herein below, Plaintiff fails to link various

22  of his factual allegations to any specific defendant(s).

23      **D.    Claims for Relief**

24      **1. *Cruel & Unusual Punishment***

25      One who makes a claim under the cruel and unusual punishments clause must show that

26  the state has created risk or inflicted pain pointlessly. "After incarceration, only the unnecessary

27  and wanton infliction of pain ... constitutes cruel and unusual punishment forbidden by the

28  Eighth Amendment." (See Johnson v. Phelan, 69 F.3d 144, 147 (1995) citing: Whitley v. Albers,

475 U.S. 312, 319 (1986) (internal quotations omitted) see also <u>Rhodes v. Chapman</u>, 452 U.S. 337 (1981); <u>Wilson v. Seiter</u> 501 U.S. 294, 289-300 (1991); <u>Helling v. McKinney</u> 509 U.S. 25 (1993).

### a. *Excessive Force*

Plaintiff's first, third, and fourth claims for relief are based on a conspiracy by various of the defendants to use excessive force against him.  Plaintiff did not delineate a separate claim for relief specifically for the use of excessive force.  However, Court screened Plaintiff's first amended complaint for possible claims of excessive force which could be inferred from Plaintiff's factual allegations.

When a prison security measure is undertaken in response to an incident such as occurred in this case, the question of whether the measures taken inflicted unnecessary and wanton pain and suffering depends on "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." <u>Hudson v. McMillian</u>, 503 U.S. 1, 4, 5-7 (1992).  Factors relevant to the analysis are the need for the application of force, the relationship between the need and the amount of force that was used and the extent of the injury inflicted. <u>Whitley v. Albers</u>, 475 U.S. 312  (1986).  Other factors to be considered are the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of the facts know to them, and any efforts made to temper the severity of a forceful response. <u>Id.</u>, at 321.  The infliction of pain in the course of a prison security measure "does not amount to cruel and unusual punishment simply because it may appear in retrospect that the degree of force authorized or applied was unreasonable, and hence unnecessary." <u>Whitley v. Albers</u>, *supra* at 319; <u>see</u> <u>also</u>, <u>Hudson v. McMillian</u>, 503 U.S. 1, (1992).  Prison administrators "should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." <u>Id.</u> at 321-322 (*quoting* <u>Bell v. Wolfish</u>, 441 U.S. 520, 547 (1970).

The Eighth Amendment also prohibits those who operate our prisons from using "excessive physical force against inmates." <u>Farmer v. Brennan</u>, 511 U.S. 825 (1994); <u>Hoptowit</u>

v. Ray, 682 F.2d 1237, 1246, 1250 (9th Cir.1982) (prison officials have "a duty to take reasonable steps to protect inmates from physical abuse"); see also Vaughan v. Ricketts, 859 F.2d 736, 741 (9th Cir.1988), cert. denied, 490 U.S. 1012 (1989) ("prison administrators' indifference to brutal behavior by guards toward inmates [is] sufficient to state an Eighth Amendment claim").  As courts have succinctly observed, "[p]ersons are sent to prison as punishment, not *for* punishment."  Gordon v. Faber, 800 F.Supp. 797, 800 (N.D.Iowa 1992) (citation omitted), aff'd, 973 F.2d 686 (8th Cir.1992).  "Being violently assaulted in prison is simply not 'part of the penalty that criminal offenders pay for their offenses against society.'"  Farmer, 511 U.S. at 834 (quoting Rhodes, 452 U.S. at 347).

Although the Eighth Amendment protects against cruel and unusual punishment, this does not mean that federal courts can or should interfere whenever prisoners are inconvenienced or suffer de minimis injuries.  Hudson v. McMillian, 503 U.S. 1, 6-7 (1992) (8th Amendment excludes from constitutional recognition de minimis uses of force).

The malicious and sadistic use of force to cause harm always violates contemporary standards of decency, regardless of whether significant injury is evident.  Id. at 9; see also Oliver v. Keller, 289 F.3d 623, 628 (9th Cir.2002) (Eighth Amendment excessive force standard examines *de minimis* uses of force, not *de minimis* injuries)).  However, not "every malevolent touch by a prison guard gives rise to a federal cause of action."  Id. at 9.  "The Eighth Amendment's prohibition of cruel and unusual punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind.'"  Id. at 9-10 (internal quotations marks and citations omitted).

Plaintiff alleges that "[s]ix of the defendants lined up at the front of this Plaintiff's cell door and took turns spraying into his cell with this new, more potent brand of 'oleoresin capsicum' chemical agent, ... ."  Doc. 10, pg. 10.  Plaintiff names twelve defendants in his first amended complaint.  Stating that six of the twelve named defendants sprayed the chemical agent into his cell is insufficient to link this alleged use of excessive force to six specific defendants.  Thus, Plaintiff fails to link these actions to any specific defendant(s).

1    Plaintiff alleges that, subsequent to the chemical being sprayed into his cell, C/O's

2    Reynaga and Williams dragged him into the center of the day room area and that C/O Reynaga

3    "suddenly fell hard into [Plaintiff's] neck area with [Reynaga's] knee, in an effort to cause

4    unnecessary injury or pain, while pressing hard with the same knee into [his] neck as [Plaintiff]

5    was being stomped by various other defendants in this pack." Doc. 10, pg. 10. Plaintiff states a

6    cognizable claim against C/O Reynaga for the use of excessive force. However, Plaintiff fails to

7    link his allegations of "being stomped" to any other specific defendant. Stating that various of

8    other defendants "stomped" him fails to put any of the other defendants on adequate notice that

9    Plaintiff is making these claims against them individually.

10    Plaintiff alleges that, subsequent to the spraying incident and his being dragged from his

11    cell, C/O's Reynaga and Williams intentionally, deliberately, and maliciously applied the

12    handcuffs and leg-restraints so tightly that Plaintiff's ankles and wrists were deeply cut and

13    severely bruised and so as to cut off the circulation in both of Plaintiffs' hands. Doc. 10, pg. 11.

14    Thus, Plaintiff states a cognizable claim for the excessive use of force against C/O's Reynaga and

15    Williams in the application of Plaintiff's wrist and ankle restraints.

16    **b.  *Deliberate Indifference to Serious Medical Needs***

17    Plaintiff's fifth, seventh, and eighth claims for relief allege deliberate indifference to his

18    serious medical needs.

19    To constitute cruel and unusual punishment in violation of the Eighth Amendment, prison

20    conditions must involve "the wanton and unnecessary infliction of pain." Rhodes v. Chapman,

21    452 U.S. 337, 347 (1981). A prisoner's claim of inadequate medical care does not rise to the

22    level of an Eighth Amendment violation unless (1) "the prison official deprived the prisoner of

23    the 'minimal civilized measure of life's necessities,'" and (2) "the prison official 'acted with

24    deliberate indifference in doing so.'" Toguchi v. Chung, 391 F.3d 1051, 1057 (9th Cir. 2004)

25    (quoting Hallett v. Morgan, 296 F.3d 732, 744 (9th Cir. 2002) (citation omitted)). A prison

26    official does not act in a deliberately indifferent manner unless the official "knows of and

27    disregards an excessive risk to inmate health or safety." Farmer v. Brennan, 511 U.S. 825, 834

28    (1994). Deliberate indifference may be manifested "when prison officials deny, delay or

1   intentionally interfere with medical treatment," or in the manner "in which prison physicians

2   provide medical care." <u>McGuckin v. Smith</u>, 974 F.2d 1050, 1059 (9th Cir. 1992), <u>overruled</u> <u>on</u>

3   <u>other</u> <u>grounds</u>, <u>WMX Techs., Inc. v. Miller</u>, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc).

4   Where a prisoner is alleging a delay in receiving medical treatment, the delay must have led to

5   further harm in order for the prisoner to make a claim of deliberate  indifference to serious

6   medical needs. <u>McGuckin</u>, 974 F.2d at 1060 (citing <u>Shapely v. Nevada Bd. of State Prison</u>

7   <u>Comm'rs</u>, 766 F.2d 404, 407 (9th Cir. 1985)).

8       Plaintiff's eighth claim for relief against MTA Embury for her failure to "provide

9   immediate and direct medical care to Plaintiff after relating to her his serious symptoms of

10   possible 'stroke'" fails to state a cognizable claim as Plaintiff fails to allege whether the delay led

11   to any further harm.

12       Plaintiff's fifth and seventh claims for relief (against Lt. Reynoso for failure to

13   decontaminate Plaintiff and/or order others to decontaminate Plaintiff) are cognizable as the

14   failure of prison officials to decontaminate an inmate following the use of pepper spray may

15   support a claim for under section 1983 for deliberate indifference to the inmate's serious medical

16   needs. <u>Clement v. Gomez</u>, 298 F.3d 898, 904-06 (9th Cir. 2002).

17                    **2.  *Procedural Due Process – False RVR's***

18       Plaintiff's second claim for relief alleges that various of the defendants made false

19   accusations against Plaintiff to conceal their excessive use of force.  The Court infers that these

20   "false accusations" were made via Rule Violation Reports.

21       The Due Process Clause protects prisoners from being deprived of liberty without due

22   process of law.  <u>Wolff v. McDonnell</u>, 418 U.S. 539, 556 (1974).  In order to state a cause of

23   action for deprivation of due process, a plaintiff must first establish the existence of a liberty

24   interest for which the protection is sought.  "States may under certain circumstances create liberty

25   interests which are protected by the Due Process Clause."  <u>Sandin v. Conner</u>, 515 U.S. 472, 483-

26   84 (1995).  Liberty interests created by state law are generally limited to freedom from restraint

27   which "imposes atypical and significant hardship on the inmate in relation to the ordinary

28   incidents of prison life."  <u>Sandin</u>, 515 U.S. at 484.

When a prisoner faces disciplinary charges, prison officials must provide the prisoner with (1) a written statement at least twenty-four hours before the disciplinary hearing that includes the charges, a description of the evidence against the prisoner, and an explanation for the disciplinary action taken; (2) an opportunity to present documentary evidence and call witnesses, unless calling witnesses would interfere with institutional security; and (3) legal assistance where the charges are complex or the inmate is illiterate.  See Wolff v. McDonnell, 418 U.S. 539, 563-70 (9th Cir. 1974); see also Superintendent v. Hill 472 U.S. 445, 454 (1985); Neal v. Shimoda, 131 F.3d 818, 830-31 (9th Cir. 1997); Walker v. Sumner, 14 F.3d 1415, 1419-20 (9th Cir. 1994); McFarland v. Cassady, 779 F.2d 1426, 1428 (9th Cir. 1986).

"When prison officials limit a prisoner's right to defend himself they must have a legitimate penological interest."  Koenig v. Vannelli, 971 F.2d 422, 423 (9th Cir. 1992) (per curiam) (concluding that prisoners do not have a right to have an independent drug test performed at their own expense).  The right to call witnesses may legitimately be limited by "the penological need to provide swift discipline in individual cases . . . [or] by the very real dangers in prison life which may result from violence or intimidation directed at either other inmates or staff."  Ponte v. Real, 471 U.S. 491, 495 (1985); see also Mitchell v. Dupnik, 75 F.3d 517, 525 (9th Cir. 1996); Koenig, 971 F.2d at 423; Zimmerlee v. Keeney, 831 F.2d 183, 187-88 (9th Cir. 1987)(per curiam).

"[T]he requirements of due process are satisfied if some evidence supports the decision by the prison disciplinary board . . . ."  Hill, 472 U.S. at 455; see also Touissaint v. McCarthy, 926 F.2d 800, 802-03 (9th Cir. 1991); Bostic v. Carlson, 884 F.2d 1267, 1269-70 (9th Cir. 1989); Jancsek, III v. Oregon bd. Of Parole, 833 F.2d 1389, 1390 (9th Cir. 1987); Cato v. Rushen, 824 F.2d 703, 705 (9th Cir. 1987); see especially Burnsworth v. Gunderson, 179 F.3d 771, 774-74 (9th Cir. 1999) (where there is no evidence of guilt may be unnecessary to demonstrate existence of liberty interest.)

However, the "some evidence" standard does not apply to original rules violation report where a prisoner alleges the report is false.  Hines v. Gomez, 108 F.3d 265, 268 (9th Cir. 1997).

Plaintiff did not state any facts to address any of the requirements set forth in Wolff.

However, Plaintiff's second claim for relief alleges that C/O's Reynaga, Williams, Clare, Chorley, Medina, Lozano, Bangloy, Jeanes, Rascoe, and Sarzi falsely accused Plaintiff of a criminal act so as to conceal their use of excessive force.  Therefore, per <u>Hines</u>, plaintiff has stated a cognizable claim against C/O's Reynaga, Williams, Clare, Chorley, Medina, Lozano, Bangloy, Jeanes, Rascoe, and Sarzi for violation of his procedural due process rights.

### 3. *Conspiracy*

Plaintiff alleges conspiracies in his first, third, fourth, and ninth claims for relief.

#### a. *42 U.S.C. 1983*

A conspiracy claim brought under section 1983 requires proof of "'an agreement or meeting of the minds to violate constitutional rights,'" <u>Franklin v. Fox</u>, 312 F.3d 423, 441 (9th Cir. 2002) (quoting <u>United Steel Workers of Am. v. Phelps Dodge Corp.</u>, 865 F.2d 1539, 1540-41 (9th Cir. 1989) (citation omitted)), and an actual deprivation of constitutional rights, <u>Hart v. Parks</u>, 450 F.3d 1059, 1071 (9th Cir. 2006) (quoting <u>Woodrum v. Woodward County, Oklahoma</u>, 866 F.2d 1121, 1126 (9th Cir. 1989)).  "'To be liable, each participant in the conspiracy need not know the exact details of the plan, but each participant must at least share the common objective of the conspiracy.'"  <u>Franklin</u>, 312 F.3d at 441 (quoting <u>United Steel Workers</u>, 865 F.2d at 1541).

The federal system is one of notice pleading, and the court may not apply a heightened pleading standard to plaintiff's allegations of conspiracy.  <u>Empress LLC v. City and County of San Francisco</u>, 419 F.3d 1052, 1056 (9th Cir. 2005); <u>Galbraith v. County of Santa Clara</u>, 307 F.3d 1119, 1126 (2002).  However, although accepted as true, the "[f]actual allegations must be [sufficient] to raise a right to relief above the speculative level . . . ."  <u>Bell Atlantic Corp. v. Twombly</u>, 127 S.Ct. 1955, 1965 (2007) (citations omitted).  A plaintiff must set forth "the grounds of his entitlement to relief[,]" which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action . . . ."  <u>Id</u>. at 1964-65 (internal quotations and citations omitted).  As such, a bare allegation that defendants conspired to violate plaintiff's constitutional rights will not suffice to give rise to a conspiracy claim under section 1983.

In his first, third, and fourth claims for relief, Plaintiff alleges that C/O's Reynaga, Williams, Clare, Chorley, Medina, Lozano, Bangloy, Jeanes, Rascoe, and Sarzi conspired to use

excessive force on him (via pepper spray and other methods) so as to deny Plaintiff his constitutionally protected right to be free from cruel and unusual punishment. Plaintiff states a cognizable conspiracy claim regarding the use excessive force on Plaintiff against C/O's Reynaga and Williams since they are the only defendants as to whom Plaintiff alleges cognizable claims for excessive use of force. Plaintiff states a cognizable conspiracy claim regarding the false charges made him by C/O's Reynaga, Williams, Clare, Chorley, Medina, Lozano, Bangloy, Jeanes, Rascoe, and Sarzi. Plaintiff also states a cognizable conspiracy claim against MTA Embury for inaccurately recording his injuries in the medical record to conceal the injuries inflicted on Plaintiff by other defendants as "[a] necessary component of minimally adequate medical care is maintenance of complete and accurate medical records ···· The harm that flows ... from inadequate or absent medical records is manifest." Coleman v. Wilson, 912 F.Supp. 1282, 1314 (E.D.Cal.1995); and medical records that are "inadequate, inaccurate and unprofessionally maintained" create "a grave risk of unnecessary pain and suffering" in violation of the Eighth Amendment. Cody v. Hillard, 599 F.Supp. 1025, 1057 (D.S.D.1984).

Thus, Plaintiff states cognizable conspiracy claims under § 1983 against C/O's Reynaga, Williams, Clare, Chorley, Medina, Lozano, Bangloy, Jeanes, Rascoe, Sarzi; and MTA Embury.

### b. *42 U.S.C. 1985*

Section 1985 proscribes conspiracies to interfere with an individual's civil rights. To state a cause of action under section 1985(3), plaintiff must allege: (1) a conspiracy, (2) to deprive any person or class of persons of the equal protection of the laws, (3) an act by one of the conspirators in furtherance of the conspiracy, and (4) a personal injury, property damage or deprivation of any right or privilege of a citizen of the United States. Gillispie v. Civiletti, 629 F.2d 637, 641 (9th Cir. 1980); Giffin v. Breckenridge, 403 U.S. 88, 102-03 (1971). Section 1985 applies only where there is a racial or other class-based discriminatory animus behind the conspirators' actions. Sever v. Alaska Pulp Corp., 978 F.2d 1529, 1536 (9th Cir. 1992).

In interpreting these standards, the Ninth Circuit has held that a claim under § 1985 must allege specific facts to support the allegation that defendants conspired together. Karim-Panahi v. Los Angeles Police Dept., 839 F.2d 621, 626 (9th Cir. 1988). A mere allegation of conspiracy

1   without factual specificity is insufficient to state a claim under 42 U.S.C. § 1985. Id.; Sanchez v.

2   City of Santa Ana, 936 F.2d 1027, 1039 (9th Cir. 1991). An allegation of racial or class-based

3   discrimination is required to state a claim for relief under either the second clause of section

4   1985(2) or section 1985(3). Bretz v. Kelman, 773 F.2d 1026, 1028-1030 (9th Cir. 1985).

5       Plaintiff fails to state a cognizable claim under § 1985 as he fails to allege racial or class-

6   based discrimination.

7                              **c.  *42 U.S. 1986***

8       "Section 1986 authorizes a remedy against state actors who have negligently failed to

9   prevent a conspiracy that would be actionable under § 1985." Cerrato v. San Francisco Cmty.

10  Coll. Dist., 26 F.3d 968, 971 n.7 (9th Cir. 1994). Plaintiff may not pursue a claim for relief

11  under 42 U.S.C. § 1986 unless he has first stated a claim for relief under section 1985.

12  McCalden v. California Library Assoc., 955 F.2d 1214, 1223 (9th Cir. 1992). As discussed in

13  the preceding paragraph, Plaintiff's first amended complaint does not contain a cognizable claim

14  for relief under section 1985. Thus, Plaintiff's first amended complaint also fails to state a claim

15  for relief under section 1986.

16                            **4.  *Failure to Train***

17      Plaintiff alleges in his sixth claim that Lt. Reynoso failed to train the defendants who

18  perpetrated the pepper spray attack.

19      A local governmental entity's failure to train its employees can also create § 1983 liability

20  where the failure to train "amounts to deliberate indifference to the rights of persons" with whom

21  those employees are likely to come into contact. City of Canton v. Harris, 489 U.S. 378, 388-89

22  (1989). "[F]or liability to attach in this circumstance the identified deficiency in a [local

23  governmental entity's] training program must be closely related to the ultimate injury." Id. at 391.

24  In other words, a plaintiff must show that his or her constitutional "injury would have been

25  avoided" had the governmental entity properly trained its employees. Oviatt v. Pearce, 954 F.2d

26  1470, 1474 (9th Cir. 1992) (citing City of Canton, 489 U.S. at 389-91, 109 S.Ct. 1197).

27  In City of Canton, Ohio v. Harris, 489 U.S. 378 (1989),  the Supreme Court held that, under

28  certain circumstances, a municipality may be held liable based on the failure to train its

1   employees.  This Court finds no authority for the extension of <u>City of Canton</u> and its progeny to a

2   state prison official being sued in his personal capacity.  It appears, following a review of the

3   relevant case law, that the cases involving failure to train are limited to suits against city and

4   county entities.  This is not to say that Plaintiff cannot allege facts involving the failure to train

5   that are sufficient to state a claim under a theory of supervisory liability.  For instance, it is

6   possible that the failure to train employees in a particular respect may amount to a policy or

7   practice of failing to provide employees with adequate training, and that the policy or practice of

8   failing to provide adequate training amounts to deliberate indifference.  However, Plaintiff's

9   allegations in the first amended complaint are insufficient to rise to the level of a cognizable

10   claim against Lt. Reynoso for failure to trail the other defendants.

11                    **5.  *Supervisor Liability***

12         In his sixth claim for relief, Plaintiff alleges that Lt. Reynoso failed to supervise the

13   defendants who perpetrated the pepper spray attack.

14         Supervisory personnel are generally not liable under section 1983 for the actions of their

15   employees under a theory of <u>respondeat</u> <u>superior</u> and, therefore, when a named defendant holds a

16   supervisorial position, the causal link between him and the claimed constitutional violation must

17   be specifically alleged.  <u>See</u> <u>Fayle v. Stapley</u>, 607 F.2d 858, 862 (9th Cir. 1979); <u>Mosher v.</u>

18   <u>Saalfeld</u>, 589 F.2d 438, 441 (9th Cir. 1978), <u>cert.</u> <u>denied</u>, 442 U.S. 941 (1979).  To state a claim

19   for relief under section 1983 based on a theory of supervisory liability, plaintiff must allege some

20   facts that would support a claim that supervisory defendants either: personally participated in the

21   alleged deprivation of constitutional rights; knew of the violations and failed to act to prevent

22   them; or promulgated or "implemented a policy so deficient that the policy 'itself is a repudiation

23   of constitutional rights' and is 'the moving force of the constitutional violation.'"  <u>Hansen v.</u>

24   <u>Black</u>, 885 F.2d 642, 646 (9th Cir. 1989) (internal citations omitted); <u>Taylor v. List</u>, 880 F.2d

25   1040, 1045 (9th Cir. 1989).

26         Although federal pleading standards are broad, some facts must be alleged to support

27   claims under section 1983.  <u>See</u> <u>Leatherman v. Tarrant County Narcotics Unit</u>, 507 U.S. 163, 168

28   (1993).

13

1        Plaintiff does not state a cognizable claim against Lt. Reynoso regarding the pepper spray

2 attack as he has not alleged any facts indicating that Lt. Reynoso personally participated in the

3 pepper spray attack; knew of the attack and failed to act to prevent it; or promulgated or

4 "implemented a policy so deficient that the policy 'itself is a repudiation of constitutional rights'"

5 and was "the moving force" behind the pepper spray attack.  Hansen v. Black at 646.

6                **6.** *Injunctive Relief*

7        To grant injunctive relief concerning serious risks to the inmate's safety, the court must

8 find that at the time the relief will be granted there is still a serious, present risk to the inmate and

9 that the prison officials are still acting with deliberate indifference to that risk.  Farmer, 511 U.S.

10 at 845-47; see also Helling v. McKinney 509 U.S. 25, 35-36 (1993) (discussing injunctive relief

11 where there is a threat of harm to inmate's health).

12        18 U.S.C. § 3626(a)(1)(A) provides in relevant part, "Prospective relief in any civil action

13 with respect to prison conditions shall extend no further than necessary to correct the violation of

14 the Federal right of a particular plaintiff or plaintiffs.  The court shall not grant or approve any

15 prospective relief unless the court finds that such relief is narrowly drawn, extends no further

16 than necessary to correct the violation of the Federal right, and is the least intrusive means

17 necessary to correct the violation of the Federal right."  In this case, Plaintiff's allegations are

18 based on a single incident and Plaintiff makes no allegations that there he is exposed to a

19 continuing, serious, present risk and that the prison officials are still acting with deliberate

20 indifference to that risk.  Further, Plaintiff's allegations do not state a cognizable claim that

21 would necessitate and/or justify prospective injunctive relief.  Thus, there is no need for the

22 Court to address Plaintiff's request for prospective injunctive relief at this time.

23 **II.**    **CONCLUSION**

24        For the reasons set forth above, Plaintiff's first amended complaint is dismissed, with

25 leave to file a second amended complaint within thirty days.  If Plaintiff needs an extension of

26 time to comply with this order, Plaintiff shall file a motion seeking an extension of time no later

27 than thirty days from the date of service of this order.

28        Plaintiff must demonstrate in his second amended complaint how the conditions

complained of have resulted in a deprivation of his constitutional rights.  See Ellis v. Cassidy, 625 F.2d 227 (9th Cir. 1980).  The second amended complaint must allege in specific terms how each named defendant is involved.  There can be no liability under section 1983 unless there is some affirmative link or connection between a defendant's actions and the claimed deprivation(s).  Rizzo v. Goode, 423 U.S. 362 (1976); May v. Enomoto, 633 F.2d 164, 167 (9th Cir. 1980); Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

Plaintiff is reminded that Fed.R.Civ.P. 18(a) provides that "'[a] party asserting a claim to relief as an original claim, counterclaim, cross-claim, or third-party claim, may join, either as independent or as alternate claims, as many claims, legal, equitable, or maritime, as the party has against an opposing party."  Thus, multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2. Unrelated claims against different defendants belong in different suits, not only to prevent the sort of morass [a multiple claim, multiple defendant] suit produce[s], but also to ensure that prisoners pay the required filing fees-for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees. 28 U.S.C. § 1915(g)."  George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007).

Plaintiff is advised that it is inappropriate to attach exhibits to a complaint.  See Rule 8, Federal Rules of Civil Procedure.  Further, the Court cannot serve as a repository for the parties' evidence.  Originals or copies of evidence (i.e., prison or medical records, witness affidavits, etc.) should not be submitted until the course of litigation brings the evidence into question (for example, on a motion for summary judgment, at trial, or when requested by the court).  At this point, the submission of evidence is premature as the plaintiff is only required to state a prima facie claim for relief.  Thus, if Plaintiff chooses to file a second amended complaint, he should simply state the facts upon which he alleges a defendant has violated his constitutional rights and refrain from submitting exhibits.

Finally, Plaintiff is advised that Local Rule 15-220 requires that an amended complaint be complete in itself without reference to any prior pleading.  As a  general rule, an amended complaint supersedes the original complaint.  See Loux v. Rhay, 375 F.2d 55, 57 (9th Cir. 1967).

1  Once Plaintiff files an amended complaint, the original pleading no longer serves any function in

2  the case.  Therefore, in an amended complaint, as in an original complaint, each claim and the

3  involvement of each defendant must be sufficiently alleged.

4      Based on the foregoing, it is HEREBY ORDERED that:

5     1.    Plaintiff's first amended complaint is dismissed, with leave to amend;

6     2.    The Clerk's Office shall send Plaintiff a civil rights complaint form;

7     3.    Within **thirty (30) days** from the date of service of this order, Plaintiff must

8      either:

9        a.    File a second amended complaint curing the deficiencies identified by the

10        Court in this order, or

11        b.    Notify the Court in writing that he does not wish to file a second amended

12        complaint and wishes to proceed only on the claims identified by the Court

13        as viable/cognizable in this order; and

14     4.    If Plaintiff fails to comply with this order, this action will be dismissed for failure

15      to obey a court order.

18  IT IS SO ORDERED.

19  **Dated:   July 16, 2008**      **/s/ Gary S. Austin**

20         UNITED STATES MAGISTRATE JUDGE